**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WORLDS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 6:20-cv-872-ADA |
| ) | |
| MICROSOFT CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

## **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION ....................................................... 1

III. BACKGROUND .................................................................................................................... 1

IV. AGREED CONSTRUCTIONS .............................................................................................. 3

    1. "server process" ........................................................................................................ 3

    2. "avatar" ..................................................................................................................... 4

V. DISCUSSION OF DISPUTED TERMS ................................................................................ 4

    3. "participant condition" ............................................................................................. 4

    4. "three dimensional" ................................................................................................. 6

    5. "customizing . . . an avatar" .................................................................................... 9

VI. CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Finisar Corp. v. DirecTV Group, Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008) ...................................................................................... 1

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*,
    887 F.2d 1050 (Fed. Cir. 1989) ...................................................................................... 1

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996) ................................. 5

*O2 Micro Intern. v. Beyond Innov. Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ...................................................................................... 5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) .................................................................. 1, 8

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................................................ 8

*Worlds Inc. v. Activision Blizzard, Inc., et al.*,
    2015 WL 3932369 (D. Mass. June 26, 2015) .................................................................. 5

I.  **INTRODUCTION**

Plaintiff Worlds Inc. ("Worlds" or "Plaintiff") asserts that Defendant Microsoft Corporation ("Microsoft" or "Defendant") infringes claims 1, 2, 5, and 10 of U.S. Patent No. 8,082,501 (the "'501 Patent") (the '501 Patent is attached to this brief as Exhibit A).

Defendant Microsoft makes, uses, sells, and offers for sale its accused Minecraft products and services, including Minecraft Java servers and Minecraft Java Edition server software products. In making its proposed claim constructions, Microsoft attempts to avoid liability for its infringement by proposing constructions that improperly import limitations from the specification into the asserted claims. Additionally, Microsoft's proposed constructions add uncertainty and ambiguity, rather than interpretating the terms from the viewpoint or a person of ordinary skill in the art at the time of the invention. As explained below, the Court should adopt Worlds' proposed claim constructions and reject Defendant's.

II.  **LEGAL PRINCIPLES OF CLAIM CONSTRUCTION**

Worlds will not repeat the basic principles and rules of claim construction, of which this Court is fully cognizant. *See Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *see also Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008), *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989).

III.  **BACKGROUND**

In 1995, four Worlds employees — Stephen Adler, S. Mitra Ardron, Judith Challinger, and David Leahy (the "named inventors") — discovered several inventions that solved crucial problems in the area of software development. They arrived at these solutions while developing Worlds' software platforms, which enabled remote users to interact in graphically rich, three-dimensional virtual environments while also accounting for the technical limitations of network

1

and computer processing restrictions. The '501 Patent reflects the inventions of those Worlds employees.

The named inventors initially set forth their inventions in a provisional patent application filed on November 13, 1995. Worlds' first non-provisional application claimed the benefit of this provisional application and issued as U.S. Patent No. 6,219,045 (the "'045 Patent") on April 17, 2001. The current '501 Patent also claims the benefit of the provisional patent application and is a continuation claiming priority back to the '045 Patent. These two patents share a common specification. The '501 Patent issued on December 20, 2011 and is entitled to the November 13, 1995 priority date.

The '501 Patent is titled: "System and Method for Enabling Users to Interact in a Virtual Space." The disclosed client-server system is highly relevant to multi-user video games and virtual worlds, where the positions and actions of each user's virtual-world avatar are communicated to other users' client devices, such as computers, to inform them of any state changes (*e.g.*, changes in position, actions, *etc.*) of avatars. *See, e.g.*, '501 Patent at 1:56–2:2. As described in the Background of the '501 Patent, there were difficulties in a conventional "client-server system" for 3-D virtual reality "game playing, where the positions and actions of **each user** need to be communicated between **all the players** to inform **each** client of the state changes (position, actions, etc.) which occurred at the other clients." *Id*. at 1:63-66 (emphasis added).

Similarly, a prior "peer-to-peer architecture" required many messages to provide the state change updates of all avatars in the virtual world, and because of the heavy processing loads and limited capabilities of a workstation in a 3-D environment, this requirement to process many messages "limits the number of clients which can be connected to the network." *Id*. at 2:4-8.

The '501 Patent describes an improved system in which "the virtual world server must be much more discriminating as to what data is provided to each client[]." *Id*. at 3:51-53. To handle the remote avatar positions received from the server, the client also can include "a way to filter out avatars" for display using, according to various embodiments, proximity, user ID, or a crowd control function. *Id*. at 6:3-5.

Thus, the '501 Patent discloses a server-side crowd control function, such that the server may notify the client of the positions of only certain relevant neighboring avatars. From the received positions, the client performs a determination of the avatars to be displayed based on, for example, the received avatar positions from the server, and application of these additional filtering and/or crowd control functions. The client's rendering engine 120 then generates the graphical display from the point of view (position and orientation) of the client's avatar. *Id*. at 7:55-57.

### IV.    AGREED CONSTRUCTIONS

During the claim construction meet-and-confer process, the parties reached agreement on the following constructions.

**1.    "server process"**

| Claim Term (Claim) | Agreed Construction |
|---|---|
| "server process"<br><br>(claim 1) | "a program executed, stored, or accessible by one or more computers that provide one or more services to users of computers across a network" |

2.   "avatar"

| Claim Term (Claim) | Agreed Construction |
|---|---|
| [three dimensional] "avatar"<br><br>(claim 1) | "a graphical representation of a user"[1] |

## V.   DISCUSSION OF DISPUTED TERMS

Worlds' constructions are clear and well-supported by the '501 Patent and the relevant intrinsic evidence. By contrast, Microsoft's constructions are unwieldy and laden with extraneous limitations that do nothing to aid the jury in understanding the asserted claims. Confirming that Microsoft is approaching claim construction with an improper eye, it even proposes a note to accompany one term's construction that is "NOT FOR THE JURY." Microsoft's proposed constructions should be rejected, and the Court should adopt Worlds' proposed constructions.

3.   "participant condition"

| Claim Term (Claim) | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "participant condition"<br><br>(claim 1) | "a condition set by the client" | "A condition set by the client." (NOTE NOT FOR THE JURY: This construction is based on the construction and reasons supporting the construction set forth in the *Worlds v. Activision Markman* Order, No. 12-10576-DJC (Dkt. 153) at pp. 14-18, including that the server uses the participant condition to determine whether or not avatar position information will be sent to the client). |

---

[1] Worlds has taken the position in other active cases that the term "avatar" alone, without the "three dimensional" modifier, still requires the "graphical representation of the user" to be in three-dimensional form. Worlds believes that construction is not at issue here since the asserted claims 1, 2, 5, and 10 of the '501 Patent expressly require the claimed "avatar" to be "three-dimensional." *See* '501 Patent at 19:23 (claim 1 expressly claiming a "three dimensional avatar").

4

Claim 1 of the '501 Patent recites, in relevant part, the step of "receiving, by the client device, position information associated with fewer than all of the other user avatars in an interaction room of the virtual space, from a server process, ***wherein the client device does not receive position information of at least some avatars that fail to satisfy a participant condition imposed on avatars*** displayable on a client device display of the client device." '501 Patent at 19:27-33 (emphasis added).

The Parties do not dispute that a "participant condition" as claimed is a "condition set by the client." The construction comports with the construction reached by District Judge Casper, after full briefing and a claim construction hearing in the co-pending litigation, *Worlds v. Activision Blizzard, Inc., et al.*, Case No. 1:12-cv-10576 (D. Mass.). *See Worlds Inc. v. Activision Blizzard, Inc., et al.*, No. 1:12-cv-10576-DJC, 2015 WL 3932369 (D. Mass. June 26, 2015) (attached as Exhibit B). The only dispute here is whether Defendant's "NOTE NOT FOR THE JURY" should be adopted. It should not.

First, Microsoft has no support in the law for a claim construction that does not apply to how the jury should understand the term "participant condition." "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Intern. v. Beyond Innov. Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996). That meaning and scope should have one understanding, equally applicable to the parties and the jury. By trying to change the construction depending on the reader will only sow confusion.

Second, Microsoft's "note" is unclear as to what additional limitation(s) it seeks to incorporate into the term, and it fails to point to claim language that would justify such additional

5

limitation(s).  The plain language of claim 1 of the '501 Patent provides the full context needed to understand the claimed "participant condition": "the client device does not receive position information of at least some avatars that fail to satisfy a participant condition imposed on avatars displayable on a client device display of the client device."  *See* '501 Patent at 19:30–38 (Claim 1).  Microsoft's wholesale incorporation of four pages of analysis from Judge Casper's claim construction Order into its proposed construction lacks any specificity of what is being incorporated, or how the incorporation changes the proper interpretation of the term.  Further, Microsoft's plea for Judge Casper's analysis to be written into a construction of the term "participant condition" is self-contradicting, as Judge Casper construed the term as a "condition set by the client" without incorporating any "note" into her construction or otherwise.  Thus, Microsoft's note is unnecessary and unsupported, and Judge Casper's construction reached at the conclusion of her analysis matches Worlds' proposed construction: "a condition set by the client."  Ex. B at 18.  Microsoft's proposed "note" should be rejected.

**4.     "three dimensional"**

| Claim Term (Claim) | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "three dimensional" [avatar] (claim 1) | No construction necessary for "three dimensional"<br><br>Or, alternatively,<br><br>"[a graphical representation of a user] in three-dimensional form" | "[A graphical representation of a user] that appears to have length, width, and depth." |

The parties agree that an "avatar" is a graphical representation of a user. The main dispute about the term is what it means for the claimed "avatar" to be three-dimensional. The '501 Patent confirms that no construction is needed for this term.  Additionally, Microsoft's proposed construction adds ambiguity without basis.

6

The specification makes clear that the patentees sought to limit their patent to three-dimensional virtual worlds and associated avatars. For example, the first sentence of the Patent's Summary of Invention reads: "The present invention provides a highly scalable architecture for a *three-dimensional* graphical, multi-user, interactive virtual world system." *See, e.g.*, '501 Patent at 2:24–26. Even the Abstract discloses a preferred embodiment where "a plurality of users interact in the *three-dimensional*, computer-generated graphical space":

> The present invention provides a highly scalable architecture for a three-dimensional graphical, multi-user, interactive virtual world system. ***In a preferred embodiment a plurality of users interact in the three-dimensional, computer-generated graphical space*** where each user executes a client process to view a virtual world from the perspective of that user. The virtual world shows avatars representing the other users who are neighbors of the user viewing the virtual word.

'501 Patent at 2:24–30 (emphasis added).

Elsewhere in the specification the patentees explained that "[e]ach *avatar 18 is a three dimensional figure* chosen by a user to represent the user in the virtual world." *Id.* at 3:25–27



FIG. 5.

(emphasis added).  The Detailed Description further discloses that "the ***avatar images are three-dimensional*** and look different (in most cases) from different angles." *Id.* at 6:14–16 (emphasis added).  Fig. 5 of the '501 Patent, which is "an illustration of an avatar" (*Id.* at 2:67), shows how an avatar may be illustrated to look different when rotated at various angles (*id*., at 15:59-60):

Notably, in these cited portions of the '501 Patent specification, the inventors did not find it necessary to explain what was meant by "three-dimensional."  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d 1312–13.  In fact, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Here, the specification of the '501 Patent confirms that even in 1995, the inventors did find it necessary to explain to a POSITA what was meant by "three-dimensional."  That term was easily understood without additional explanation.  Further, a jury in 2021 or 2022 would not be confused by the term, "three dimensional."

Moreover, Defendant's proposed construction adds uncertainty where none should exist.  Specifically, Defendant proposes that a "three dimensional" avatar be construed to mean an avatar "that appears to have length, width, and depth."  This particular interpretation of the phrase "three dimensional" does not exist in the specification of the '501 Patent, nor do the terms "length," "width," and "depth" appear in the specification of the '501 Patent (save for the inapplicable phrase "subcommand is of fixed length" at 12:24).  Moreover, Microsoft's proposed construction introduces unnecessary uncertainty by adding the subjective term "appears."  This term is also not used in the '501 Patent, whether to describe the meaning of "three-dimensional" or otherwise.  It

is a term of Microsoft's manufacture and is simply unnecessary where the plain and ordinary meaning of the term is sufficient to convey the scope of the claim.

If a construction is adopted, which Worlds submits is unnecessary, the construction should simply confirm that a "three-dimensional" avatar is an avatar "in three-dimensional form."

### 5. "customizing . . . an avatar"

| Claim Term (Claim) | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "customizing . . . an avatar"<br><br>(claim 1) | No construction necessary<br><br>Or, alternatively,<br><br>"generating and storing … a custom avatar image" | "generating an avatar that is not a predefined avatar provided to the user" |

As noted above in Section IV, the parties agree that an "avatar" is a graphical representation of a user. The main dispute about the "customizing … an avatar" term is what it means to perform the step of "customizing." Worlds respectfully submits "customizing" is used in the '501 Patent in its ordinary sense and that no additional construction is needed.

First, the full claim term, provided in context and without ellipses, already provides sufficient clarity to set forth the metes and bounds of this claim term. In particular, the full claim term recites, "customizing, using a processor of the client device, an avatar in response to input by the first user." *See* '501 Patent at 19:25-26 (claim 1). This phrase confirms that "customizing" an avatar requires user input, which is consistent with both the understood meaning of "customizing" and with the specification of the '501 Patent.

Claims 3 and 4, while not currently asserted in this case, also shed light on what is meant by "customizing." Claim 3 introduces a "first database containing custom avatar images," while claim 4 recites, in relevant part, that the step of "customizing" "further comprises selecting from the first database information that is used to render the avatars in the displayable set." *Id*. at 19:45-

9

51 (claim 3 and claim 4). These claims further confirm that customizing can include selecting information used to render avatars. This is supported by the specification, which discloses that "client 60 starts a virtual world session with *user A* selecting an avatar from fixed avatar image database 71 or *generating a custom avatar image*. In practice, custom avatar image database 108 might be combined with fixed avatar image database 71 into a modifiable avatar image database. In either case, user A selects an avatar image and a pointer to the selected image is stored in current avatar position register 114." '501 Patent at 6:59-66 (emphasis added).

Thus, the scope of "customizing" includes but is not expressly limited to a user uploading a specific image for their customized avatar image, and can also include accessing a database of selectable options that are combinable to generate the custom avatar image. While Worlds maintains that no construction is needed for this term, incorporating Worlds' alternative construction into the claim term confirms that Worlds has the better approach: "<u>generating and storing</u>, using a processor of a client device, <u>a custom avatar image</u> in response to input by the first user."[2]

Microsoft's proposed construction takes the approach of trying to define "customizing" through a negative definition, *i.e.* by stating what is not included in "customizing." This tortured approach confirms that a jury would understand "customizing" better than Microsoft's proposed construction. Further, Microsoft's proposed construction raises other unanswered questions. What does it mean for an "avatar" to be "predefined?" How is this "predefined avatar" "provided to the user?" By raising these unanswered questions about what is expressly excluded from the

---

[2] The underlined text reflects Worlds' alternative proposed construction, while the remaining text is the claim language as written.

claim scope, Microsoft's proposed construction seems improperly directed toward a non-infringement position, rather than providing clarity to the claim term at issue.

Accordingly, adopting Microsoft's proposed construction would lead to increased jury confusion, and does not advance the goals of claim construction. Worlds maintains that no construction is needed. However, if the Court concludes that a construction is needed, it is enough to construe this claim term to confirm that the client device's processor is "generating and storing … a custom avatar image."

## VI. CONCLUSION

For the foregoing reasons, this Court should adopt Plaintiff's proposed constructions.

Dated: April 9, 2021                                              *Respectfully submitted*,

*Of Counsel*:

| | |
|---|---|
| DAVIDSON BERQUIST JACKSON & GOWDEY, LLP | ETHERIDGE LAW GROUP, PLLC |
| Wayne M. Helge<br>Alan A. Wright<br>Donald L. Jackson<br>James T. Wilson<br>8300 Greensboro Drive, Suite 500<br>McLean, VA 22102<br>Tel: (571) 765-7700<br>whelge@dbjg.com<br>awright@dbjg.com<br>djackson@dbjg.com<br>jwilson@dbjg.com | */s/ Ryan S. Loveless*<br>James L. Etheridge, TX Bar No. 24059147<br>Ryan S. Loveless, TX Bar No. 24036997<br>2600 E. Southlake Blvd., Suite 120 / 324<br>Southlake, TX 76092<br>Tel.: (817) 470-7249<br>Jim@EtheridgeLaw.com<br><br>*Attorneys for Plaintiff Worlds, Inc.* |

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure on April 9, 2021.

>*/s/ Ryan S. Loveless*
>Ryan S. Loveless